UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENEE M. BROMLEY,                          Case No. 16-12837

                                           Paul D. Borman
                        Plaintiff,         United States District Judge
v.

                                           Stephanie Dawkins Davis
COMMISSIONER OF SOCIAL SECURITY,           United States Magistrate Judge

                        Defendant.
_____/

**REPORT AND RECOMMENDATION REGARDING
PLAINTIFF'S AND DEFENDANT'S CROSS-MOTIONS
FOR SUMMARY JUDGMENT (Dkts. 13 and 14)**

## I.     PROCEDURAL HISTORY

### A.     Proceedings in this Court

On August 2, 2016, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  This case

was referred to the undersigned magistrate judge for determination of all non-

dispositive motions and for the issuance of a Report and Recommendation on

dispositive motions by District Judge Paul D. Borman on that same date.  (Dkt. 4).

This matter is before the Court on cross-motions for summary judgment.  (Dkts. 13

and 14).

B.    Administrative Proceedings

Plaintiff filed the instant claims for period of disability and disability insurance benefits on November 18, 2013, alleging disability beginning October 24, 2013.  (Tr. 164-165)[1].  Plaintiff's claim was initially disapproved by the Commissioner on April 22, 2014.  (Tr. 83-97).  Plaintiff requested a hearing, and on May 7, 2015 plaintiff appeared and testified, with the assistance of her attorney, before Administrative Law Judge (ALJ) Christopher Ambrose, who considered the case *de novo*.  (Tr. 26).  In a decision dated May 13, 2015, the ALJ found that plaintiff was not disabled.  (Tr. 11).  Plaintiff requested a review of this decision in an undated letter.  (Tr. 6).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on June 3, 2016.  (Tr. 1); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, that the findings of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED.**

---

[1] All references to the administrative record are denoted by "Tr." followed by the internal page number, and can be located at docket no. 11.

## II.    FACTUAL BACKGROUND

### A. ALJ's Findings

On the alleged onset of disability date, plaintiff was 40 years old, which falls

into the category of "a younger individual."  (Tr. 17).  Plaintiff, a high school

graduate and resident of Jackson Michigan, has past relevant work as a production

assembler, cashier 2, customer service representative and direct care worker.  *Id.*

Plaintiff stopped working in October of 2013 after suffering a stroke.

The ALJ applied the five-step disability analysis to plaintiff's claims and

found at step one that plaintiff did not engage in any substantial gainful activity

since the alleged onset date.  (Tr. 13).  At step two, the ALJ found that plaintiff had

the following severe impairments:  status post left parameridian stroke,

hypertension, insulin dependent diabetes, nicotine dependency, adjustment

disorder with depressed mood, obesity, and status post thyroid cancer with

thyroidectomy.  (*Id.*).  At step three, the ALJ found that plaintiff did not have an

impairment or combination of impairments that met or equaled one of the listings

in the regulations.  (Tr. 14).  The ALJ determined that plaintiff has the residual

functional capacity (RFC) to perform:

> …light work as defined in 20 CFR 404.1567(b) except the claimant
> can frequently use foot controls with right lower extremity.  She can
> frequently handle of (sic) objects and can occasionally finger of (sic)
> objects with right upper extremity.  The claimant can climb no
> ladders, ropes or scaffolds.  She can occasionally climb ramps or
> stairs, balance, stoop, kneel, crouch and crawl.  The claimant is able to

3

perform simple, routine and repetitive tasks with only occasional interactions with the public and coworkers.

(Tr. 15).  At step four, the ALJ determined that plaintiff could not perform her past relevant work.  (Tr. 17).  At step five, the ALJ denied plaintiff benefits because he found that plaintiff could perform a significant number of jobs available in the national economy.  (Tr. 18).

B. Plaintiff's Claims of Error

Plaintiff claims that the ALJ made several errors which require remand. First, she argues that the ALJ's RFC finding, stating that she can perform light work with certain specified limitations, is not supported by substantial evidence in the record.  More specifically, plaintiff contends that the ALJ should have ordered a consultative exam as the absence of a physician's examination assessing her physical limitations resulted in the ALJ engaging in the prohibited practice of "playing doctor" in fashioning her RFC.   Because there was no doctor's examination assessing her physical limitations, the record is devoid of any opinion by either an examining or treating physician stating that plaintiff could sustain light work for a full 8-hour workday, staying on task at least 85% of the day, and missing work no more than one time per month.  Plaintiff points out that well before her stroke, her rheumatologist, Sonia Yousef, M.D. had noted plaintiff's 44.8 BMI, neuropathy secondary to long-standing diabetes and possible plantar

fasciitis in relation to her complaints of back and leg pain. (Tr. 267-268). Plaintiff's argument appears to suggest that in view of this history, the ALJ's decision to proceed with assessing her RFC without a medical opinion addressing her right sided numbness and residual weakness from her stroke, layered on top of the noted preexisting conditions constitutes legal error.

Plaintiff's second argument is that the ALJ's RFC failed to appropriately consider her severe mental impairment of affective disorder with depressed mood and obesity. Although the ALJ credited the State Agency reviewing psychologist's conclusion that plaintiff showed "moderate" limitations in her ability to concentrate, persist and keep pace, the limitations he included in plaintiff's RFC in relation to that conclusion were insufficient. Plaintiff insists that merely limiting her to "performing simple, routine and repetitive tasks with only occasional interaction with the public and coworkers" does not adequately capture her difficulties in maintaining concentration, persistence and pace in combination with her crying spells and uneasiness with leaving the house.

As a consequence of the aforementioned deficiency in the RFC, plaintiff posits that the hypothetical posed to the vocational expert compounded the error. More particularly, plaintiff avers that the ALJ's hypothetical suggesting an individual who would be limited to simple, routine and repetitive tasks does not match with an individual who experiences moderate limitations in her ability to

concentrate, persist and keep pace.  Plaintiff relies on the Sixth Circuit's decision

in *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) for the

proposition that the hypothetical must "accurately portray a claimant's physical

and mental impairments."  Citing *Green v. Comm'r of Soc. Sec.* 2009 WL 2365557

at *10 (E.D. Mich. July 28, 2009), plaintiff advances the position that moderate

limitations mean limitations affecting 20% to 30% of the time at work.  Whether

the work is simple, routine and repetitive is not necessarily relevant to the worker's

ability to concentrate, persist and keep pace.  As noted in *Edwards v. Barnhart*,

383 F.Supp.2d 920, 930 (E.D. Mich. 2005), "[P]laintiff may be unable to meet

quotas, stay alert, or work at a consistent pace, even at a simple, unskilled routine

job."  Because these two assessments are not mutually exclusive, plaintiff contends

the vocational expert's testimony about the jobs someone with her vocational

profile and limitations would be able to do is flawed.

Plaintiff states that the ALJ also failed to consider the impact of her obesity

in combination with her other impairments in assessing her RFC.  According to

plaintiff, merely mentioning obesity is not sufficient evidence that the ALJ actually

analyzed it at all stages of the sequential evaluation.

Plaintiff's final claim of error is that the ALJ failed to reconcile the jobs that

the vocational expert listed were available, with the RFC set forth by the ALJ.

Here, plaintiff notes that the ALJ limited plaintiff to light, unskilled jobs where she

could frequently use foot controls with the right lower extremity, frequently handle

objects, and occasionally finger objects with the right upper extremity.  According

to plaintiff, a review of the specific jobs listed by the VE:  Kick Press Operator

(*DOT* 692.685-102); Folder Operator (*DOT* 208/685-014); and Shirt Sorter (*DOT*

222.687-014), reveals that the requirements for all three of the jobs are inconsistent

with the RFC the ALJ assessed.  And, the ALJ failed to reconcile that

inconsistency during his examination of the VE.  This failure to reconcile the

discrepancy requires remand.

    C. <u>The Commissioner's Motion for Summary Judgment</u>

    The Commissioner argues that based on the evidence available to him, the

ALJ's RFC determination is supported by substantial evidence.  As plaintiff noted,

there is no examining or treating source opinion in the record concerning her

physical limitations; but plaintiff's reliance on that fact to sustain her argument that

the RFC lacks substantial evidentiary support is unavailing since it was plaintiff's

burden to produce credible evidence to support her claim that her impairments

caused greater functional limitations than the ALJ assessed.  According to the

commissioner, the ALJ was not required to accept plaintiff's complaints about

functional limitations without objective medical evidence to support them.  It is

within the purview of the ALJ to assess the credibility of plaintiff's complaints

based on a review of the entire record.  *Casey v. Sec'y of Health & Human Serv.,*

987 F.2d 1230, 1235 (6th Cir. 1993).  And, the Commissioner asserts that that is exactly what the ALJ did here.

The Commissioner points out that the ALJ relied on the opinions of state agency medical reviewer Dr. Csokasy and consultative examining source Dr. Brown in assessing plaintiff's mental RFC.  He also relied, in part, on the opinion of state agency medical reviewer Dr. Choi in imposing certain limitations as part of plaintiff's physical RFC.  The Commissioner suggests it is inappropriate for plaintiff to insist that the matter be remanded for the ALJ to obtain a physical examination to better inform plaintiff's physical limitations when her attorney did not believe such an examination was necessary at the time of her hearing.  (Tr. 258-261).  Furthermore, the decision whether to seek out further evidence like additional testing is within the ALJ's discretion and plaintiff has not demonstrated that obtaining such an examination would have helped her cause.  *See Landsaw v. Sec'y of Health & Human Serv.,* 803 F. 2d 211, 214 (6th Cir. 1986).

Regarding the latter point, the Commissioner contends that plaintiff has not specified in any meaningful way how obtaining another medical opinion would buttress plaintiff's claim.  The Commissioner points out that the objective medical evidence shows that many of her stroke symptoms resolved within a few months.  (Tr. 49-51, 59).  Furthermore, though plaintiff complained of residual numbness in her right hand and leg, the records of her treating physicians showed that they did

not observe any problems with her gait in November and December of 2013 and

April of 2014; and her strength and sensations in all extremities were noted to be in

tact in both November and December of 2013.  Her treatment records do not

contain any corroboration for her testimony that she frequently fell down and

dropped things.  Yet, notwithstanding the relative dearth of evidence corroborating

some of her claims of limitation, the ALJ incorporated physical limitations which

comported with many of those claims by restricting her to frequent use of foot

controls with the right lower extremity, frequent handling of objects with the right

upper extremity, and occasional fingering of objects with the right upper extremity.

(Tr. 15-17).  Plaintiff has not articulated how obtaining a consultative examination

would have changed that outcome.

The Commissioner also argues that plaintiff's contention that the ALJ

"played doctor" in assessing an RFC without the benefit of a medical opinion on

her physical impairments fails because the ALJ appropriately weighed the medical

and non-medical evidence before him.  And, in any event, a medical opinion is not

necessarily required to reach a conclusion about a claimant's disabilities.  *See Rudd*

*v. Comm'r of Soc. Sec.*, 531 F. Appx. 719, 728 (6th Cir. 2013); *Cox v. Comm'r of*

*Soc. Sec.*, 615 F. Appx. 254, 263 (6th Cir. 2015).  Moreover, the ALJ's RFC

limitations were more favorable than the medical opinion evidence warranted.

Therefore, even if there were any error in fashioning the RFC without a medical

opinion concerning her physical limitations, it inured to plaintiff's benefit, and as a consequence was harmless.

Next, the Commissioner says that the ALJ properly accounted for plaintiff's mental impairments as well as her obesity.  Citing, *Kepke v. Comm'r of Soc. Sec.*, 636 F. Appx. 625,635 (6th Cir. 2016), the Commissioner argues that utilizing a hypothetical which calls for simple, unskilled work is not *per se* improper when the claimant has moderate limitations in concentration, persistence and pace (CPP). The ALJ expressly stated that his RFC assessment was reflective of the Paragraph B mental function analysis he had conducted. (Tr. 15).  Furthermore, the ALJ's assessment lines up with Dr. Csokasy's opinion that plaintiff had the mental RFC to do simple/routine tasks on a sustained basis, even though he also concluded that she had moderate limitations to CPP.

On the issue of plaintiff's obesity, the Commissioner argues that SSR 02-01p simply requires the ALJ to consider it in combination with a claimant's other impairments.  It does not require any particular method of analysis beyond that. The Commissioner cites the following as evidence that the ALJ properly considered plaintiff's obesity here:  (1) He identified obesity at step two of the sequential analysis (Tr. 13); (2) addressed it in his RFC discussion (Tr. 17); and (3) implicitly considered it when he relied on Dr. Choi's opinion in which the doctor acknowledged plaintiff's weight, BMI and obesity diagnosis, yet still concluded

10

that she could tolerate a range of light work. (Tr. 92-94).  Furthermore, plaintiff

does not identify any additional limitations which she claims result from her

obesity.  As a result, the commissioner states that plaintiff's argument fails.

Finally, as to plaintiff's challenge to the VE's testimony concerning jobs

available based on plaintiff's restrictions, the Commissioner argues that contrary to

plaintiff's assertion, there was no apparent conflict between the jobs cited by the

VE and the *Dictionary of Occupational Titles* (*DOT*).  To the extent that plaintiff

asserts a conflict between the *DOT* and the VE's testimony about dominant hand

restrictions and the use of foot controls, relevant case law in this district provides

that the *DOT's* silence on these issues results in a finding of no conflict.  *See*

*Trischler v. Comm'r of Soc. Sec.*, 2015 WL 5016600 at 25 (E.D. Mich. Aug. 24,

2015).  Moreover, the Sixth Circuit has held that an ALJ may rely on a VE's

knowledge and experience concerning the job market to support his step-five

findings.  *Conn v. Sec'y of Health & Human Serv.*, 51 F.3d 607, 610 (6th Cir.

1995).  And, in any event, plaintiff's counsel's election not to question the VE in

order to cure the perceived conflict obviated any responsibility for the ALJ to

investigate further.  *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir.

2009).

## III.   DISCUSSION

### A.   Standard of Review

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed

> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

      B.     <u>Analysis and Conclusions</u>

          1.    RFC physical limitations were supported by substantial
                evidence.

Plaintiff's complaint that the ALJ assessed her physical RFC to perform a

limited range of light work, without the benefit of a consultative examination is

accurate, but not dispositive on the issue of its validity.  The ALJ concluded that

plaintiff retained the functional capacity to perform light work in which she can

frequently use foot controls with her right lower extremity, frequently handle

objects and occasionally finger objects with her right upper extremity; she can

climb no ladders, ropes or scaffolds; and she can occasionally climb ramps or

stairs, balance, stoop, kneel, crouch and crawl.  In particular, plaintiff takes issue

with the fact that light work requires frequent lifting or carrying objects and a good

deal of walking or standing.  Because frequent is defined in the regulations as one-

third to two-thirds of an eight hour workday, light work would require plaintiff to

walk or stand anywhere from 2.67 to 5.36 hours out of an eight hour workday –

something that plaintiff denies being able to do because of her right hand, arm and leg weakness.

Notably, the ALJ was not required simply to accept plaintiff's testimony concerning her physical limitations and fashion an RFC to match.  Indeed, credibility determinations on witness testimony fall squarely within the province of the ALJ, and should not be disturbed absent a "compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2009).  And here, the ALJ deemed plaintiff's testimony about her physical limitations as "not entirely credible." (Tr. 16).   In assessing plaintiff's credibility, the ALJ was required to consider plaintiff's statements about her pain and other symptoms with the rest of the relevant evidence in the record and the factors set forth in SSR 96-7p, 1996 WL 374186, at *2.  Factors for the ALJ to consider may include (1) the claimant's daily activities; (2) location, duration, frequency and intensity of symptoms; (3) factors that precipitate or aggravate the symptoms (4) type, dosage, effectiveness and side effects of medication; (5) treatment other than medication the claimant receives for relief of symptoms; and (6) measures other than treatment the claimant has used to relieve symptoms.  *Id.*   In his decision, the ALJ noted that in spite of her claims of disabling limitations, plaintiff only experienced severe stroke symptoms for a few months.  She resumed driving about six or seven months after the stroke.  Plus, even with the numbness in her right upper and lower extremities she could drive,

cook, walk and do light housekeeping.  (Tr. 16).  Additionally, Dr. Choi, the state agency doctor who reviewed plaintiff's record, opined that she was able to work within a range of light work.  (Tr. 17, 83).  And, plaintiff's medical records revealed that she reported significant improvement in her neurological deficits throughout the course of her hospital stay.  Dr. Saunders, the surgeon who performed her thyroidectomy in December of 2013 reported that plaintiff had normal cardiovascular, skin, back and spine exam, as well as appropriate memory, no numbness, normal gait and coordination, good strength and tone, appropriate mood and affect, no memory loss, normal insight, and normal attention span and concentration. (Tr. 17, 761).  Two months after her thyroidectomy, plaintiff's treating endocrinologist, Dr. Halsey stated that plaintiff's prognosis was "very good" and "overall she looks great."  (Tr. 17, 786).  Additionally, by July 2014, plaintiff's treating optometrist, Dr. Serino reported that her vision, which had initially been compromised after her stroke the preceding October, was 20/20 in bilateral eyes. (Tr. 17, 821).  In view of the above facts, which the ALJ incorporated into his analysis, his findings as to plaintiff's subjective symptoms is sound, and plaintiff does not specifically challenge it.  Thus, plaintiff's intimation that her limitations exceed those assessed by the ALJ must find support elsewhere.

Based upon the record evidence discussed above, and for the reasons that follow plaintiff's contention that the ALJ was required to order a consultative

medical examination concerning her physical limitations is unavailing. To begin with, "An ALJ has discretion to determine whether further evidence, such as additional testing, is necessary." *Landsaw v. Sec'y of Health & Human Serv.*, 803 F. 2d 211, 214 (6th Cir. 1986). Moreover, the Commissioner has correctly pointed out that it is the plaintiff's responsibility to present evidence to establish her RFC. In that regard, the statute specifically sets forth, "[A]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C. § 423(b)(5)(A). Plaintiff has not done so here.

Plaintiff complains that no examining or treating physician ever opined that plaintiff can work an eight hour work day and stay on task for 85% with absences of one day or less per month. To support her claim for greater limitations, plaintiff points primarily to Dr. Yousuf's records showing that she suffered from back and leg pain, obesity and other ailments over a year before her disability onset date. (Tr. 267-268). Though Dr. Yousuf diagnosed plaintiff with neuropathy secondary to long-standing history of diabetes and possible plantar fasciitis, and prescribed 25 mg Elavil for symptomatic relief, she did not note any resulting physical limitations and there are no follow-up records from her indicating a treatment outcome. Significantly, while perhaps instructive as to plaintiff's longitudinal treatment history, the noted records relate to a time period when plaintiff was in

fact successfully engaging in substantial gainful activity.   It is unclear, how the substance of these records logically leads to a conclusion that the ALJ impermissibly "played doctor," or otherwise imposes a responsibility on the ALJ to obtain a consultative medical opinion.   Indeed, the Sixth Circuit has expressly set forth, albeit in unpublished decisions, that the ALJ is "charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence…to require the ALJ to base her RFC finding on a physician's opinion, 'would confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'"   *Rudd v. Commissioner of Soc. Sec.,* 531 Fed. Appx. 719 (6th Cir. 2013), quoting SSR 96-5p, 1996 WL 374183 (July 2, 1996); See also *Brown v. Comm'r of Soc. Sec.* 602 F. Appx. 328, 331 (6th Cir. 2015)(Holding that an ALJ is not required to seek out a doctor's medical opinion where the plaintiff has not offered one).

Furthermore, while the undersigned recognizes and appreciates the rationale for a divergent line of cases that has developed within this circuit suggesting the need to obtain a medical opinion in developing the RFC to avoid the prospect of an ALJ "playing doctor," as alluded to above, the ALJ's decision here does not implicate that concern.   *See e.g., Deskin v. Comm'r Soc. Sec*., 605 F.Supp.2d 908,

912 (N.D. Ohio 2008); *Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio

Nov. 4, 2009); *Wyatt v. Comm'r of Soc. Sec.*, 2013 WL 4483074, *12 (E.D. Mich.

Aug. 19, 2013).   Plaintiff has not pointed to any particular medical records that

were unusually complicated or suggestive of a misinterpretation on the ALJ's part.

Further, though the ALJ rejected the portions of Dr. Choi's opinion stating lighter

restrictions than the ALJ ultimately assessed, he did so based on an assessment of

the record as a whole – including his own observations of plaintiff as she testified,

the substance of plaintiff's testimony, and other reports that were added to the

record after Dr. Choi's review.

Notably, no treating or reviewing doctor opined that plaintiff should be

assessed greater physical limitations than those contained in the RFC; and the

ALJ's assessment assigned greater limitations than those assigned by Dr. Choi.

Nor has plaintiff pointed to any evidence in the record that would suggest

obtaining a consultative examination would have rendered a different result.   Thus,

if there be any err at all, it inured to plaintiff's benefit – not "to plaintiff's damage"

as she contends.   *See Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (to show

prejudice, a claimant must demonstrate that he or she "could and would have

adduced evidence that might have altered the result"); *Binion v. Shalala*, 13 F.3d

243, 245 (7th Cir. 1994) ("Mere conjecture or speculation that additional evidence

might have been obtained in the case is insufficient to warrant a remand."); *Roache*

*v. Comm'r of Soc. Sec.*, No. 14-cv-11233, 2015 WL 669875, at *2 (E.D. Mich. Feb. 13, 2015) (rejecting plaintiff's argument that the ALJ should have ordered a consultative examination to explore her alleged social anxiety where plaintiff failed to produce objective evidence that greater limitations were warranted).

    2.    RFC adequately accounted for plaintiff's mental impairment and obesity.

The ALJ's limitation of plaintiff to simple, routine and repetitive tasks, with only occasional interaction with coworkers is supported by substantial evidence. Because the ALJ concluded that plaintiff exhibits moderate difficulties in concentration, persistence and pace, plaintiff insists that the stated restriction insufficiently captures her limitations and the hypothetical posed to the VE using that restriction cannot constitute substantial evidence supporting the ALJ's findings. If the ALJ's hypothetical posed to the VE is accurate, then he can rely on the VE's testimony to show that plaintiff is able to perform a significant number of jobs. *Anderson v. Comm'r Soc. Sec.*, 406 Fed. Appx. 32, 35 (6t h Cir. 2010).

To begin with, the Sixth Circuit has acknowledged that, "[c]ase law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence and pace." *Kepke v. Commissioner of Soc. Sec.*, 636 Fed. Appx. 625 (6th Cir. 2016). In *Kepke*, the court distinguished the plaintiff's circumstances there from the circumstances found in *Ealy v. Comm'r of Social Sec.*, 594 F.3d

504 (6th Cir. 2010), the case on which plaintiff relies here.  The court explained

that the problem with the ALJ's hypothetical in *Ealy* was that one of the plaintiff's

doctor's had specifically limited his ability to sustain concentration to "simple

repetitive tasks [for] '[t]wo hour] segments over an eight-hour day where speed

was not critical.'" *Kepke*, 636 Fed. Appx. at 635.  Yet, the ALJ's hypothetical had

only included the limitation of "simple repetitive tasks."  Because the plaintiff in

*Kepke* failed to point to any record evidence stating "concrete limitations" as to her

ability to maintain concentration, persistence or pace while doing simple, unskilled

work (the limitations posed by the ALJ in his hypothetical to the VE) her challenge

failed.  *Id.*

Similarly, in the instant case, plaintiff has failed to come forward with

record evidence of concrete limitations to her ability to maintain concentration,

persistence or pace while performing "simple, routine and repetitive tasks with

only occasional interaction with the public and coworkers." (Tr. 15).  Dr. Csokasy

opined that plaintiff could perform "simple/routine tasks on a sustained basis and

had moderate limitations interacting appropriately with the general public."  (Tr.

83-96).  And, while it is true that following his consultative examination evaluating

plaintiff's mental status, Dr. Brown reported that plaintiff reported depression,

isolation and weight gain after her surgery, he did not include any specific or

"concrete" limitations as to her concentration, persistence or pace.  Moreover, his

observation concerning plaintiff isolating herself was, in fact, addressed by the ALJ's inclusion of moderate limitations interacting appropriately with the general public.  Notably, Dr. Brown also reported that plaintiff takes a prescription for her anxiety, she watches television for 10 hours or more daily, receives visits from friends, and prefers routine.  *Id.*

Additionally, the hypothetical the ALJ posed to the VE actually extended beyond stating moderate limitations interacting appropriately with the public.  Specifically, the ALJ also queried whether there would be any jobs available for an individual whose physical and mental symptoms caused her to be off task at least twenty percent of the workday beyond regularly scheduled breaks due to focus issues.  (Tr. 80).   The VE responded as follows:

> They could be off task, a person in an entry level unskilled occupation, no more than 15 percent of the day.  And if they were taking unscheduled breaks outside those given by the employer, there would be no obligation by the employer to compensate them for their time and it would erode the eight-hour day, 40-hour work week and they could not maintain competitive employment.  (Tr. 81).

Importantly, plaintiff has not pointed to any evidence in the record indicating that her functional limitations reach this scenario.  Plaintiff's reliance on *Green v. Comm'r of Soc. Sec.*, 2009 WL 2365557, at 10 (E.D. Mich. July 28, 2009), for the proposition that moderate limitations in CPP mean 20%-30% of the time at work is

misguided.[2]  In *Green*, the plaintiff, who suffered from several mental

impairments, presented medical opinion evidence demonstrating specific

limitations not captured in her RFC or VE hypothetical.  The plaintiff's treating

physician in *Green* had opined that her mental impairments would cause marked

limitations in her ability to relate and interact with supervisors, coworkers and the

public; and she would be extremely limited in her ability to understand, remember

and carry out simple one or two-step job instructions, maintain concentration and

attention for at least two hour increments and withstand the stress of an eight-hour

workday.  *Green* at *4.  Another doctor, with whom the ALJ had agreed, reported

that she was moderately limited in her ability to perform activities within a

schedule, maintain regular attendance and be punctual within customary

tolerances.  *Id.* at 8.  Given that all of the psychiatric evaluations in that case

showed moderate or worse mental impairments, the court concluded that the ALJ's

hypothetical merely limiting the plaintiff's interactions with co-workers and the

public in unskilled, light jobs was insufficient.  Though the court included dicta

suggesting that moderate CPP reasonably means 20%-30% of the time, the critical

inquiry the court focused on was whether the description provided to the VE

reflected the claimant's actual limitations based on the record before the court.

---

[2] The Commissioner has persuasively cited numerous cases within this district in which the court
has held that moderate limitations in CPP can adequately be captured by RFC language similar
to that used in the instant case.  (Dkt. 14, Pg. ID 916).

Here, the opinions of Dr. Csokasy and Dr. Brown as well as those portions of
plaintiff's testimony that the ALJ deemed credible, support the limitations that the
ALJ assessed.  Therefore, there is no reason to disturb his decision.

Plaintiff's complaint that the ALJ failed to consider the effects of her obesity
on her functional limitations is also without merit.  SSR 02-1p, 2002 WL
34686281, addresses the Agency's responsibility to assess the severity and
limitations arising from a claimant's obesity.  As noted by the Sixth Circuit, it
would be "'a mischaracterization to suggest that Social Security Ruling 02-1p
offers any particular procedural mode of analysis for obese disability
claimants'…[i]nstead [the ruling] provides that 'obesity, in combination with other
impairments, 'may' increase the severity of the other limitations.'" Coldiron *v.*
*Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 443 (6th Cir. 2010), citing *Bledsoe v.*
*Barnhart*, 165 Fed. Appx. 408, 411-12 (6th Cir. 2006).  Thus, the ALJ's
responsibility is to "consider the claimant's obesity, in combination with other
impairments, at all stages of the sequential evaluation."  *Nejat v. Comm'r of Soc.*
*Sec.*, 359 Fed. Appx. 574, 577 (6th Cir. 2009).

The ALJ fulfilled that responsibility here.  At step two of his sequential
analysis, the ALJ identified obesity as one of plaintiff's severe impairments. (Tr.
13).  In his discussion of impairments, he also acknowledged plaintiff's history of
obesity and noted her weight of 220 pounds, height of 5'5" and BMI of 35.  In

fashioning her RFC, the ALJ again noted her obesity, as well as her own testimony in which she reported weighing 240 pounds and standing at 5'4" amongst the factors considered in assessing her limitations. (Tr. 17). The ALJ also relied on Dr. Csokasy's opinion, in which he expressly acknowledged plaintiff's obesity, yet concluded that plaintiff "is able to perform simple/routine tasks on a sustained basis." (Tr. 91). And, he partially accepted Dr. Choi's opinion, whose record review included information on plaintiff's obesity, height, weight and BMI, yet still concluded that she was able to perform within a range of light work. (Tr. 93-94). After citing the findings of treating physicians Dr. Saunders, Dr. Halsey, Dr. Serino and consultative medical advisor Dr. Brown, the ALJ noted that there were no opinions indicating that plaintiff had limitations greater than those contained in the RFC. (Tr. 17). Thus, the court does not accept plaintiff's contention that the ALJ's consideration of plaintiff's obesity was "a mention of the fact in mere passing," and concludes that his analysis of plaintiff's obesity in combination with her other impairments does not provide grounds for remand.

3. The ALJ's Step 5 finding is supported by substantial evidence.

Plaintiff claims that the three jobs identified by the VE in her testimony conflict with plaintiff's RFC, and the ALJ failed to resolve the conflict. SSR 00-4p requires the following: "When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the [ALJ] must elicit a reasonable explanation

for this conflict before relying on the VE or VS evidence to support a determination about whether the claimant is disabled."  As an initial matter, plaintiff fails to specify the precise conflict to which she avers.  Indeed, based upon her own recitation of the *DOT* descriptions, each of the latter two jobs expressly indicate that they call for frequent handling and occasional fingering.  *See, DOT* 208.685-014 and *DOT*  222.687-014.  Even though the descriptions provide a more expansive explanation of the physical actions required for the jobs, they ultimately characterize those actions as having handling and fingering limits that align with the ALJ's RFC.  Plaintiff does not cite any authority, nor provide a rationale for concluding that the handling and fingering limits listed in the descriptions are wrong.  Thus, plaintiff's claim that the basic requirements of the jobs "greatly exceed" her capacity to finger and handle is not well taken.

Plaintiff's RFC also limited her to frequently use foot controls with the right lower extremity.  The Kick Press Operator job *DOT* description includes a statement that it requires one to depress a pedal to lower a plunger and join fastener parts to fabric.  The *DOT* is silent on the use of foot controls.  Where the *DOT* is silent, "a VE's testimony filling in the gaps does not raise a conflict."  *See Trischler v. Comm'r of Soc. Sec.*, 2015 WL 5016600, at *25 (E.D. Mich. Aug. 24, 2015).  Therefore, the VE was permitted to fill in the gaps here.  Though the RFC limited plaintiff to frequently use foot controls with the right lower extremity, the

ALJ's query to the VE was whether she could do that with <u>occasional</u> right foot controls.  (Tr. 79).  The VE responded, "Yes, It doesn't have anything to do with kicking like your feet."  In this regard, the hypothetical did not match the RFC, but because the VE indicated that plaintiff could perform the job with an even lower frequency than plaintiff was assessed he needn't have inquired further.  As the Commissioner has pointed out, much like the plaintiff in *Hull v Comm'r of Social Sec.,* 2013 WL 6729955 (E.D. Mich. Dec. 19, 2013), "[P]laintiff's argument assumes the VE's knowledge is inconsistent with the *DOT*," but "has provided no reason that the ALJ should have assumed the VE's testimony was inaccurate or untruthful."  *Id. at *10.*

Furthermore, plaintiff's counsel's failure to take the opportunity to cross examine the VE on this topic provides additional grounds to deny plaintiff's request for remand on this issue.  *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 606 (6th Cir. 2009)(where the VE denied the existence of discrepancies between his testimony and the *DOT*, and plaintiff passed on the opportunity to question him about it, SSR 00-4p did not require the ALJ to investigate further); *accord Beinlich v. Comm'r of Soc. Sec.*, 345 F. Appx. 163, 168 (6th Cir. 2009).

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.


Date:  September 15, 2017                    s/Stephanie Dawkins Davis
                                            Stephanie Dawkins Davis
                                            United States Magistrate Judge


## CERTIFICATE OF SERVICE

    I certify that on September 15, 2017, I electronically filed the foregoing
paper with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.

                                         s/Tammy Hallwood
                                            Case Manager
                                            810-341-7887
                                            tammy_hallwood@mied.uscourts.gov